UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DOCHKI INVESTMENTS LLC, | § | |
| | § | |
| Plaintiff, | § | |
| V. | § | |
| | § | CIVIL ACTION NO. ______________ |
| ALLSTATE LENDING GROUP, INC.; | § | |
| KENNETH RUBENDALL; | § | |
| and MICHAEL SCANNELL, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

## I. NATURE OF SUIT

1. This action arises out of a years-long pattern of fraudulent conduct by Defendants Allstate Lending Group, Inc., Kenneth Rubendall, and Michael Scannell in soliciting, accepting, and misappropriating Plaintiff Dochki Investments LLC's funds in a series of purportedly secured real estate loans.

## II. JURISDICTION & VENUE

2. This Court has subject-matter jurisdiction over the federal securities claim pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1331. Supplemental jurisdiction exists over the related state law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the federal cause of action. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims occurred within this District, including the solicitation, sale, and management of the investments described below. The transactions alleged herein involved the offer and sale of securities in interstate commerce by use of the mails and other instrumentalities of interstate commerce.

## III. PARTIES

3. Plaintiff Dochki Investments LLC is a Texas Limited Liability Company with its principal place of business in Texas.

4. Defendant Allstate Lending Group, Inc. ("Allstate") is, and at all relevant times was, a California corporation with its principal offices in Southern California, engaged in originating, pooling, and selling fractionalized interests in secured real estate loans to individuals and entities.

5. Defendant Kenneth Rubendall ("Rubendall") is, and at all relevant times was, an individual residing in California and a principal, officer, and controlling person of Allstate, responsible for investor relations and loan origination.

6. Defendant Michael Scannell ("Scannell") is, and at all relevant times was, an individual residing in California and a principal, officer, and controlling person of Allstate, responsible for loan servicing and investor communications.

## IV. FACTS

7. This action arises out of a years-long pattern of fraudulent conduct by Defendants in soliciting, accepting, and misappropriating Plaintiff's funds in a series of purportedly secured real estate loans.

8. Between 2024 and 2025, Plaintiff invested $200,000 in fractionalized loans originated and sold by Defendants. In doing so, Plaintiff relied upon representations made by Defendants. For example, Defendants represented that each of Plaintiff's investments would be secured by liens against real property, in favor of Plaintiff.

9. In truth, as Plaintiff later discovered through recorded documents, title searches, subsequent investigation, and Defendants' own admissions of guilt, Defendants systematically

falsified documents, failed to record Plaintiff's interests in real property, and, in many cases, executed and recorded (or caused and/or approved) reconveyances showing that security instruments had been reconveyed without any payoff to Plaintiff. Each falsified assignment and reconveyance operated to extinguish Plaintiff's purported secured interests and to conceal the diversion of investor funds. Defendants have since wholly admitted that Plaintiff's investment proceeds were misappropriated or used for undisclosed purposes.

10. Defendants' tortious conduct is illustrated via the following example:

11. In or around January 2024, Defendants presented an investment opportunity to Plaintiff regarding the real property located at LOT 1, BLOCK 194, MARCO BEACH UNIT NO. SEVEN, ACCORDING TO THE MAP OR PLAT THEREOF, AS RECORDED IN PLAT BOOK 6, PAGES 55 THROUGH 62, OF THE PUBLIC RECORDS OF COLLIER COUNTY, FLORIDA. A.P.N.: 576563600084028 (the "Marco Island Property"). Specifically, Defendants told Plaintiff: (A) The owner of the Marco Island Property sought to borrow $1.25mil; (B) Defendants planned to make the loan at an interest rate of 11.25% annual; (C) The loan would be secured against the Marco Island Property; (D) The loan would be fully repaid within one year.

12. Defendants asked Plaintiff to participate in the loan by contributing a portion of the $1.25mil to be loaned. Defendants told Plaintiff that, if Plaintiff participated, they would receive assignment of a proportional interest in the deed of trust encumbering the Marco Island Property.

13. Based on Defendants' representations, Plaintiff agreed to participate in the loan.

14. Thereafter Defendants represented to Plaintiff that they had purportedly performed the following: (A) made the loan and obtained a deed of trust encumbering the Marco Island Property; and (B) prepared and recorded an assignment of deed of trust to Plaintiff stating

that Defendants' deed of trust on the Marco Island Property had been partially assigned to Plaintiff.

15. Based on Defendants' representations, Plaintiff reasonably believed it owned a portion of the deed of trust encumbering the Marco Island Property such that, if the loan was not timely repaid, Plaintiff could foreclose on their portion of the deed of trust.

16. HOWEVER, Plaintiff later learned that Defendants' purported assignment was fraudulent and never recorded in the Official Records of Collier County, Florida. Instead, Plaintiff later learned that in September of 2024, the owner of the Marco Island Property executed and recorded a Quitclaim deed disposing of its interest in the property.

17. As a result, Plaintiff never obtained a lien against the Marco Island Property, as promised by Defendants, and the purported ownership of the Marco Island Property was transferred without any regard to any purported encumbrance.

18. Plaintiff made repeated inquiries into the status of the Marco Island Property loan payoff and status; each time, over and over, Defendants told Plaintiff the loan was scheduled to be repaid; on multiple occasions in Q4 of 2025, Defendants stated the property was scheduled for "closing" and the loan would be repaid.

19. Defendants engaged in similar conduct with respect to another loan in which Plaintiff were induced to contribute for a property located at: LOT 2 IN BLOCK 7 OF W.G. NEVIN TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 1 PAGE(S) 53 AND 54 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY. A.P.N.: 5073-005-020 (the "Gramercy Property").

20. As with the Marco Island Property, Defendants urged Plaintiff to participate in the Gramercy Property loan, promising that Plaintiff would be fully repaid, with interest, no later than when the borrower repaid the loan. In other words, Defendants promised that, concurrent with the borrower's repayment of Defendants, Defendants would pay all amounts owing to Plaintiff. In addition, as with the Marco Island Property, Defendants would receive assignment of a proportional interest in the deed of trust encumbering the property.

21. In January of 2026, Plaintiff received a "Notice" from Defendants unequivocally admitting that investor funds had been internally "misappropriated" and that payments would be suspended because "the company [Allstate] does not currently have authority to process distributions from that [bank] account."

## V. CAUSES OF ACTION

22. Plaintiff restates and reasserts the allegations contained in the paragraphs above as if fully set forth herein.

### A. Violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) and SEC Rule 10b-5 (17 CFR § 240.10b-5).

23. From at least 2024 through 2025, Defendants, directly and indirectly, in connection with the offer, purchase, and sale of securities, employed devices, schemes, and artifices to defraud Plaintiff; made untrue statements of material fact and omitted to state material facts necessary in order to make statements made not misleading; and engaged in acts, practices, and courses of business which operated as a fraud and deceit upon Plaintiff.

24. The securities at issue included, among other things, fractionalized interests in real-estate-backed loans, notes, and investment contracts, offered and sold to Plaintiff as passive

investments from which Plaintiff was to receive profits in the form of interest and repayment, derived substantially from the managerial and operational efforts of Defendants.

25. Defendants made materially false statements and omissions, including but not limited to representations that: (A) Plaintiff would receive recorded assignments of deeds of trust securing their investments; (B)Plaintiff's investments were fully secured by liens against identified real property; (C) Plaintiff would be paid their proportional share of loan repayments when borrowers repaid Defendants; and (D) Plaintiff's funds would be used solely for the represented loan transactions.

26. In truth, Defendants failed to record Plaintiff's security interests, falsified assignment documents, recorded reconveyances extinguishing security interests without payoff, diverted investor funds for undisclosed purposes, and transmitted false reports purporting to reflect ongoing secured loan payments.

27. Defendants acted with scienter, including intent to deceive, manipulate, or defraud, or with deliberate recklessness, as evidenced by, among other things, the preparation and delivery of fraudulent recorded documents, concealment of reconveyances, and misappropriation of investor funds.

28. Plaintiff reasonably relied on Defendants' misrepresentations and omissions and suffered substantial damages as a direct and proximate result of Defendants' conduct.

29. By reason of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

**B. Violation of Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t).**

30. At all relevant times, Rubendall and Scannell were controlling persons of Allstate within the meaning of Section 20(a) of the Exchange Act.

31. Rubendall and Scannell had the power and authority to control and influence, and did control and influence, the policies, management, and conduct of Allstate, including the offering and sale of the securities at issue and the preparation and dissemination of false and misleading documents.

32. By reason of such control, Rubendall and Scannell are liable for Allstate's violations of Section 10(b) and Rule 10b-5.

**C. Breach of Contract.**

33. Plaintiff and Defendants entered into written and oral agreements pursuant to which Plaintiff agreed to provide funds for participation in specific real-estate loans originated by Defendants.

34. Under the agreements, Defendants promised, among other things, that: (A) Plaintiff would receive valid and recorded assignments of proportional interests in deeds of trust securing the loans; (B) Plaintiff's investments would be secured by liens against identified real property; and (C) Plaintiff would be paid its proportional share of principal and interest when borrowers repaid the loans to Defendants.

35. Plaintiff fully performed its obligations under the agreements by providing the agreed investment funds.

36. Defendants materially breached the agreements by, among other things: (A) Failing to assign or record plaintiff's security interests as promised; (B) Delivering falsified or fraudulent assignment documents; (C) Recording or causing recording of reconveyances

extinguishing security interests without payoff; and (D) Failing to remit loan repayments to Plaintiff when borrowers repaid Defendants.

37. As a direct and proximate result of Defendants' breaches, Plaintiff suffered damages in an amount according to proof.

**D. Breach of Fiduciary Duty.**

38. Defendants acted as fiduciaries to Plaintiff by holding and managing Plaintiff's investment funds, selecting borrowers, originating and servicing loans, recording security instruments, collecting loan payments, and distributing proceeds to Plaintiff.

39. Plaintiff placed trust and confidence in Defendants, who exercised superior knowledge, access to information, and exclusive control over the loan transactions and related security instruments.

40. Defendants owed Plaintiff fiduciary duties of loyalty, care, honesty, full disclosure, and to refrain from self-dealing and misappropriation.

41. Defendants breached their fiduciary duties by, among other things: (A) Misappropriating plaintiff's funds for undisclosed purposes; (B) Failing to record plaintiff's security interests as promised; (C) Creating and delivering falsified assignment documents; (D) Recording reconveyances that extinguished security interests without disclosure; and (E) Retaining loan repayments that should have been distributed to Plaintiff.

42. Defendants acted intentionally, maliciously, and in conscious disregard of Plaintiff's rights, and Plaintiff was damaged as a direct and proximate result of Defendants' breaches.

**E. Fraudulent Inducement.**

43. Prior to Plaintiff's investments, Defendants made false representations and concealed material facts, including that: (A) Plaintiff would receive recorded assignments of deeds of trust; (B) Plaintiff's investments would be fully secured by real property; (C) Plaintiff would be paid upon borrower repayment; and (D) Plaintiff's funds would be used solely for the represented loan transactions.

44. At the time the representations were made, Defendants knew they were false or made them recklessly without regard for their truth.

45. Defendants intended to induce Plaintiff to enter into the investment agreements and provide funds.

46. Plaintiff reasonably relied on Defendants' misrepresentations and omissions in deciding to invest.

47. Plaintiff was harmed as a direct and proximate result of Defendants' fraudulent inducement.

48. Defendants' conduct was despicable and carried out with malice, oppression, and fraud, entitling Plaintiff to punitive damages.

**F. Fraud.**

49. Defendants knowingly made false representations of material fact, including representations regarding the existence, recording, and enforceability of Plaintiff's security interests and the use and repayment of Plaintiff's funds.

50. Defendants knew the representations were false or made them with reckless disregard for their truth.

51. Defendants intended that Plaintiff rely on the misrepresentations.

52. Plaintiff reasonably relied on Defendants' misrepresentations.

53. Plaintiff suffered damages as a direct and proximate result.

54. Defendants' conduct was intentional, fraudulent, and malicious, warranting punitive damages.

**G. Negligent Misrepresentation.**

55. Defendants made representations of material fact regarding the security, recording, and repayment of Plaintiff's investments in the course of their business and in transactions in which Defendants had a pecuniary interest.

56. Defendants had no reasonable grounds for believing the representations were true.

57 Defendants intended, or reasonably should have expected, that Plaintiff would rely on the representations.

58. Plaintiff justifiably relied on the representations.

59. Plaintiff was damaged as a direct and proximate result of Defendants' negligence.

## VI. PRAYER

WHEREFORE, Plaintiff prays for judgment against all Defendants, jointly and severally, as follows:

1. For rescission of all investment transactions and restitution of the full amount invested, with interest according to law.

2. For compensatory damages in an amount to be proven at trial.

3. For punitive and exemplary damages for Defendants' intentional and malicious fraud.

4. For disgorgement of all profits and proceeds derived from Plaintiff's funds.

5. For attorneys' fees and costs as allowed by law.

6. For prejudgment and post-judgment interest.

7. For such other and further relief as the Court may deem just and proper.

January 22, 2026.

Respectfully submitted,

*/s/ Ye-Whei Peter Chen*
Ye-Whei Peter Chen
Texas State Bar No. 24065038
peter@chendotson.com
CHEN DOTSON PLLC
10455 N. Central Expwy., Suite #109-348
Dallas, Texas 75231
(469) 251-2436 (telephone)
(972) 476-1080 (facsimile)

ATTORNEYS FOR PLAINTIFF